IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BOBBY LOPEZ,

    Plaintiff,

  v.

DONALD SPECTER, STEVEN FAMA and
PRISON LAW OFFICE

    Defendants.
                                         /

No. C 06-02007 WHA

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this legal malpractice suit brought by a death-row inmate, defendants Donald Specter, Steven Fama, and the Prison Law Office move for summary judgment under Rule 56(c). Plaintiff Bobby Lopez, currently on death row at San Quentin State Prison, was classified as "Grade B" for housing and program purposes based on the determination by prison officials that he was affiliated with prison gangs. Plaintiff brought suit for malpractice based on defendants' failure to pursue reclassification to "Grade A" status in Marin County Superior Court, and the case was removed to federal court on March 16, 2006. Defendants contend that plaintiff has not established an essential element of his case, and therefore move for summary judgment. After full review of the record, defendants' motion for summary judgment is **GRANTED**.

**STATEMENT**

This case arises out of a long-running action, now referred to as *Lancaster v. Tilton*, Case No. 79-1630-WHA (N.D. Cal.), in which defendants are serving as class counsel for condemned inmates at San Quentin State Prison in Marin County, California. In 1980, a district court approved a settlement agreement reached between the plaintiffs in that case and California's Department of Corrections, and entered judgment in the form of a consent decree (Specter Decl. ¶ 5). In a section titled "Classification," the consent decree read as follows (Specter Decl. Exh. A):

> A. <u>Grades</u>
> Condemned inmates shall generally be classified into two grades: A and B. Inmates in the two grades are, respectively, generally described as:
>
> Grade A: Inmates without a high violence or escape potential who have demonstrated a good disciplinary free adjustment and are able to get along safely and peaceably with other inmates and staff.
>
> Grade B: Inmates with a high escape or violence potential or who are serious disciplinary or management cases. Included are those inmates with a history of escape, in-prison assault, gang affiliation, introduction of contraband, or weapons possession.
>
> Walk-alones: Those inmates who would otherwise be classified as Grade A but who are unacceptable to the Grade A population. Those inmates will be afforded as much of the program available to Grade A inmates, including tier movement with compatible walk-alones as possible

This consent decree was eventually terminated subsequent to the enactment of the 1996 Prison Litigation Reform Act by Congress (Specter Decl. ¶ 9). The Ninth Circuit then reversed the termination order, and remanded the case for further proceedings on the constitutionality of conditions for condemned prisoners. *See Gilmore v. California*, 220 F.3d 987 (2000). After remand, the Prison Law Office and the Department of Corrections entered into negotiations regarding the design and operation of a new death row facility at San Quentin. Eventually, the parties agreed on modifications to the consent decree and a new set of procedures for the new facility, while keeping the existing consent decree intact. This modification was requested by written order. The new facility was never built.

One of the issues that came up during negotiations was the procedure for classifying inmates as Grade B based on gang activity. One inmate, Freddie Fuiava, wanted the Department of Corrections to apply the gang validation procedures found in Title 15 of the California Code of Regulations, rather than the system set forth in the consent decree. Defendants claim that they decided not to advocate this position, but instead to negotiate a requirement that under the consent decree system prison staff would have to rely on actual gang activity instead of mere gang affiliation to support Grade B classification. This proposal, in defendants' view, "would have protected class members' interests in some ways that were better than the Title 15 regulations, which allow for indefinite terms of segregation on the basis of gang membership or association instead of actual gang-related activity." In addition, defendants claim they concluded that raising the gang validation issue with the district court "would likely have invited a renewed motion to terminate by the *Lancaster* defendants that could have resulted in greater harm to the inmates on death row" (Specter Decl. Exh. A).

Plaintiff Bobby Lopez was convicted of three gang-related murders and sentenced to death in 1997. He was classified as a "Grade B" prisoner at San Quentin, based on violent tendencies and gang membership. He was validated as a member of the Nuestra Familia prison gang in December 1997. His gang status has been reviewed and confirmed on the basis of new information added to his file after his validation, which includes statements from other inmates stating Lopez recruited and confirmed other inmates as Nuestra Familia members. Prison records indicate that Lopez functioned as the "overall authority" of Northern Hispanic gang activities while he was in jail in Santa Clara County awaiting trial (Sitkin Decl. Exh. 2).

In his current suit, plaintiff alleges that defendants are "cash cow class action litigation attorneys who only seek to use prisoners to seek forms of settlements" in the *Lancaster* case (Opp. 1). Plaintiff claims that Title 15 of the California Code of Regulations, Section 3044 established privilege rules for inmate work and training groups, and that the enactment of this section rendered moot the classification section of the consent decree. Alleging that "class counsel refused to have all of these owed state law mandated rights provided" and "refused to take any action to force the owed states [sic] mandates to be provided," plaintiff contends that

3

defendants committed malpractice (Opp. 3). Plaintiff seeks $50 million in damages to compensate him for wrongful confinement under Grade B conditions and an additional $50 million in punitive damages. Defendants moved for summary judgment on May 23, 2007. Plaintiff filed his opposition nearly six months later on November 15, 2007. This case is in federal court under removal jurisdiction pursuant to 28 U.S.C. Section 1441(b) because plaintiff is attacking a federal district court order, namely the consent decree arising from the *Lancaster* litigation.

**ANALYSIS**

Summary judgment shall be rendered if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FRCP 56(c). Summary judgment is not granted if the dispute about a material fact is "genuine" — that is, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The evidence, and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

The moving party "has both the initial burden of proof and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). On a motion by the party without the burden of proof at trial, the party may carry its initial burden by either of two methods. "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Id*. at 1106. Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) (internal quotations omitted). Summary judgment for a defendant is appropriate when plaintiff

4

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which party will bear the burden of proof at trial." *Id*. at 322.

**1. Plaintiff Cannot Show that Defendants Owed Him a Legal Duty.**

Summary judgment for defendants is now appropriate. "The elements of a cause of action for attorney malpractice under California law are: (1) the duty to use such skill, prudence, and diligence as members of the profession commonly possess; (2) breach of that duty; (3) a proximate question between the breach and the injury; and (4) actual loss or damage." *Loyd v. Paine Webber, Inc*., 208 F.3d 755, 759 (9th Cir. 2000). Defendants contend that they owe plaintiff no duty, and instead owe a duty only to the class in the *Lancaster* case as a whole. Defendants are correct, and as such, it is unnecessary to delve into all of the arguments presented by plaintiff.

As the advisory committee notes to the 2003 amendments to Rule 23 state, "[A]ppointment as class means that the primary obligation of counsel is to the class rather than any individual members of it." Rather than representing individual clients, "in a class suit, class counsel's client is the *group* which comprises the class, rather than any individual class member." *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1159 (2000) (emphasis added). This duty to the class does not require the counsel to argue every issue, or litigate every claim, that individual members of the class might propose. In malpractice cases in California, counsel is "entitled to assess which issues are potentially meritorious." *Redante v. Yockelson*, 112 Cal. App. 4th 1351, 1357 (2003). Attorneys are not required to raise "each and every claim that the facts of a case possibly support." *Janik v. Rudy, Exelrod & Zief*, 119 Cal. App. 4th 930, 946 (200). "It is only if class counsel overlook or mishandle a claim in a manner that competent counsel would not do that they may incur liability to members of the class that they have undertaken to represent." *Ibid*. Therefore, counsel's judgment that certain issues were not arguable, if legitimately related to the interests of the class and not outside the common level of skill, cannot form the basis of a malpractice claim. In support of this argument, defendants present the declaration of Mr. Specter, stating that the decision not to argue that the Title 15 gang validation regulations should apply was in the best interests of the class

5

(Specter Decl. ¶ 12–14). The declaration states that the decision was rational because defendants had little chance of a victory on that issue through litigation and raising the issue might open the door for another attempt to terminate the consent decree (*Ibid.*).

Plaintiff argues that defendants should have argued on his behalf as to putting in place new standards for gang member validation, that they failed to adequately represent Grade B prisoners, and that defendants have acted solely in their own interest throughout this long-running litigation. Nowhere, however, does plaintiff attempt to argue the existence of a legal duty owed to individual members of the class. He also does not argue that defendants' failure to pursue the imposition of the Title 15 regulations was against the best interests of the class as a whole, or outside the bounds of the level of skill commonly required of lawyers. Even if the Title 15 system would have been beneficial to plaintiff, in the absence of a legal duty, defendants were under no obligation to pursue that tactic.

### 2. Plaintiff Cannot Show an Injury.

Even if defendants owed a duty to plaintiff as an individual, which they do not, defendants are still entitled to summary judgment because plaintiff has not, and cannot demonstrate that plaintiff has suffered any actual injury. In this case, if the undisputed facts demonstrate that plaintiff would not have been reclassified as a Grade A prisoner even under the Title 15 regulations, then defendants are entitled to summary judgment. That is the case here.

Title 15 states that a gang member is "an inmate/parolee who has been accepted into membership by a gang." 15 Cal. Code Regs. § 3378(c)(4). That section further states that "identification requires at least three (3) independent source items of documentation indicative of actual membership," with at least one source being a "direct link to a current or former validated member or associate of the gang." *Ibid*. Evidence for consideration includes self admission, tattoos and symbols, gang documentation, photographic evidence, and prison staff observations. 15 Cal. Code Regs. § 3378(c)(8). Under this title, gang members are considered severe threats and are placed in secured housing for "an indeterminate term." 15 Cal. Code Regs. § 3341.5(c)(2)(A)(2). There is no doubt, based on the evidence supplied in connection with defendants' motion for summary judgment, that even under the Title 15 regulations,

6

plaintiff would have been deemed a gang member and placed in restrictive housing. In fact, plaintiff was validated as a gang member in December 1997. The validation was based on six source items, including reports from prison staff at other institutions, statements by other inmates and intercepted communications. After his initial validation, more information was added to his file confirming his gang status. The information included statements from other inmates as recently as 2004 that Lopez recruited and confirmed other inmates as Nuestra Familia members (Sitkin Decl. Exh.2). These are not contested by plaintiff.

Instead, plaintiff's opposition is full of conclusory statements referring to "cash cow litigation" and a high prisoner mortality rate associated with defendants' litigation tactics. Plaintiff states, without explanation, that the sources used for gang validation under the consent decree would be illegal under Title 15 (Opp. 13). There is no evidence of this. This order finds that plaintiff cannot prove that he would have been reclassified under Title 15.

## CONCLUSION

Plaintiff cannot meet the requirements for a malpractice action under California law. Defendants have clearly show that they were under no duty to plaintiff as an individual, and especially under no duty to make arguments that they could have reasonably believed were detrimental to the class. Moreover, even if they owed plaintiff a duty, plaintiff cannot demonstrate an injury due to defendants conduct. For the above reasons, defendants' motion for summary judgment is hereby **GRANTED**.

**IT IS SO ORDERED.**

Dated: December 21, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE